AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Hampshire

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 21-mj-36-01-AJ
)
THE RESIDENCE LOCATED AT 19-1 WOODSIDE )
LANE, ROCHESTER, NH 03867 )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (Attached and Incorporated Herein)

located in the _____ District of ___New Hampshire___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (Attached and Incorporated Herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) | Possession with the Intent to Distribute and Distribution of Controlled Substances |
| 21 USC 846 | Conspiracy to Possess with the Intent to Distribute and Distribution of Controlled Substances |

The application is based on these facts:
See Affidavit (Attached and Incorporated Herein)

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Daniel Perlack
*Applicant's signature*

Special Agent Daniel Perlack
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**Telephonic conference** *(specify ...)*

Date: **Feb 24, 2021**

Andrea K. Johnstone
*Judge's signature*

City and state: Concord NH

Andrea K. Johnstone, United States Magistrate Judge
*Printed name and title*

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE RESIDENCE LOCATED AT 19-1 WOODSIDE LANE, | Case No. 21-mj- 36-01-AJ<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Daniel Perlack, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

2. I am a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and have been so employed since January 2002. I am currently assigned to the Manchester, New Hampshire field office.

3. As part of my regular duties as a Special Agent, I investigate criminal violations relating to a broad range of immigration and customs-related statutes and have been cross designated to investigate violations relating to the distribution of illicit narcotics as specified

1

under Title 21 of the U.S. Code. I have been trained in drug investigations, narcotic identification, search warrants, undercover techniques, surveillance, debriefing of informants, and other investigative procedures. Through my training, education, and experience, I have become familiar generally with the manner in which drug distribution organizations conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement.[1] In the course of participating in investigations of drug distribution organizations, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of search warrants, the use of tracking devices, debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings.

4. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains all the material information I am aware of that is pertinent to the requested search warrant, it does not set forth all of my knowledge about this matter.

## PURPOSE OF SEARCH WARRANT

5. This affidavit is made in support of an application for an anticipatory search warrant to search the premises located at 19-1 Woodside Lane, ("the SUBJECT PREMISES"), as more particularly described in Attachment A, and for authority to seize evidence, fruits, and instrumentalities of the following offenses: (a) possession with the

---

[1] Observations made and conclusions drawn throughout this affidavit that are based on my training and experience also include the training and experience of other law enforcement agents and officers with whom I have discussed these issues.

2

intent to distribute and the distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); and (b) conspiracy to possess with the intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 846, as more particularly described in "Attachment B" hereto.

## DESCRIPTION OF PROPERTY TO BE SEIZED

See Attachment B.

## SHOWING OF PROBABLE CAUSE

6. On February 07, 2021 as part of an ongoing mail operation at the John F. Kennedy International Airport ("JFK") International Mail Facility in New York, Customs and Border Protection ("CBP") seized an envelope ("the SUBJECT PACKAGE") during a border search.

7. The SUBJECT PACKAGE was selected for inspection by CBP Officers, who were conducting routine Customs inspections of international mail. Upon inspection of this package it was found to contain an unknown substance which field tested positive for the presence of narcotics. The SUBJECT PACKAGE entered the United States from the Netherlands.

8. The SUBJECT PACKAGE is described as a white envelope bearing no sender information. Located on the front lower center and to the left and right of the recipient address of the SUBJECT PACKAGE are stamps marked with the words "International", "Nederland", "2014" and "PRIORITY". The SUBJECT PACKAGE is also clearly marked on the front center with the intended recipient as "Mr. Luke Marshall ("MARSHALL"), 19-1 Woodside Lane, United States.

9. CBP agents conducted field tests on the SUBJECT PACKAGE which showed presumptive positive results for the presence of 3,4-Methylenedioxymethamphetamine ("MDMA")/Ecstasy, a Schedule I controlled substance. The total weight of the SUBJECT PACKAGE is 115 grams. I know based on my training and experience that 115 grams of MDMA/Ecstasy, even with packaging, is a quantity intended for distribution rather than intended for personal use.

10. The SUBJECT PACKAGE was then forwarded from the HSI office at JFK to the HSI office in Manchester, New Hampshire where it is currently located.

11. According to information obtained from a law enforcement database, the address for the SUBJECT PREMESIS is associated with MARSHALL          1988) as recently as February 22, 2021. Furthermore, Rochester, New Hampshire Police Department records from September 2013 involving police contact with MARSALL at the SUBJECT PREMISES indicate that the SUBJECT PREMISES was reported to be MARSHALL's residence.

12. If this application is approved, HSI, in conjunction with other Federal and State law enforcement agencies, intends to deliver a package ("the SHAM PACKAGE") that looks, weighs, and feels like the SUBJECT PACKAGE. The SHAM PACKAGE will have an exact copy of the mailing label and contain a non-narcotic substance similar in appearance to the contents of the SUBJECT PACKAGE.

## TRAINING AND EXPERIENCE OF AFFIANT

13. Drug trafficking intelligence information has demonstrated that Priority Mail is a method frequently used by drug traffickers for shipping drugs and drug proceeds. Use of Priority

4

Mail is favored because of the speed, reliability, free telephone and Internet package tracking service, as well as the perceived minimal chance of detection. Priority Mail was originally intended for urgent, business-to-business, correspondence. However, based on law enforcement intelligence and my personal experience with numerous prior packages that were found to contain contraband, packages containing contraband are usually sent from one individual to another individual.

14. Based upon my training, experience, and the training and experience of other agents with whom I have worked and spoken, I know that:

a. drug traffickers often store drugs in private places including in their residences, areas of curtilage, outbuildings such as sheds or trailers, vehicles, and in stash houses;

b. drug traffickers often possess and store firearms in their residences, their vehicles, and in stash houses in order to protect themselves, their supplies of drugs, and/or drug proceeds;

c. narcotics traffickers must maintain, on hand, large amounts of U.S. Currency in order to maintain and finance their on-going narcotics business;

d. it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them including their residences and their vehicles;

e. it is common for drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses, their

vehicles, stash houses, and/or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

f. narcotics traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates or business entities to avoid detection of these assets by government agencies;

g. even though these assets are in the names of others, the narcotics traffickers actually own and continue to use these assets, and exercise dominion and control over them;

h. it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, electronics, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers' checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses, vehicles or other locations which they maintain dominion and control over;

i. when drug traffickers amass significant proceeds from the sale of drugs, they often attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, among other mechanisms, domestic and international banks and their attendant accounts, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency. Traffickers often commingle narcotics proceeds with money generated by legitimate businesses;

j. traffickers commonly maintain books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

k. traffickers take or cause to be taken photographs of themselves, their associates, and their property. That these traffickers usually maintain these photographs in their possession;

l. drug traffickers often use electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and or store information in furtherance of their drug trafficking activities;

m. drug traffickers often use cellular and/or portable telephones, smart phones, and other electronic equipment and data storage devices in furtherance of their criminal activities;

n. narcotics traffickers often utilize multiple vehicles in furtherance of their drug trafficking to include rental vehicles and vehicles registered in the names of third parties.

15. Based on the above information, I request an anticipatory search warrant for the residence located at the SUBJECT PREMISES described in Attachment A. I plan to have the SHAM PACKAGE delivered by an undercover agent to that address. It is my intent to execute the search warrant only when the following conditions are met: a) The SHAM PACKAGE is delivered to the SUBJECT PREMISES, and b) a person takes possession of the SHAM PACKAGE and takes it into the SUBJECT PREMISES. The warrant will be executed if, and only if, the SHAM PACKAGE is accepted and taken inside the SUBJECT PREMISES.

16. The following grounds are reasonable cause for allowing the search warrant to be executed during the daytime or in the nighttime: the conditions precedent to executing this warrant may not occur until nighttime. The SHAM PACKAGE may not be taken into the

residence until nighttime. In such instance, evidence may be moved or destroyed. Accordingly, I request authorization to execute this warrant in either the daytime or the nighttime.

17. Based on these facts described above, I believe that there is probable cause to believe that if the SHAM PACKAGE is taken into the SUBJECT PREMISES, the SUBJECT PREMISES described above will contain items described in Attachment B that constitute fruits, evidence or instrumentalities of drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and distribution of controlled substances) and 846 (conspiracy to possess with the intent to distribute and distribution of controlled substances). Accordingly, I respectfully request that this Court issue an anticipatory search warrant authorizing the search of the SUBJECT PREMISES for the items described in Attachment B, upon the occurrence of the triggering events described above.

/s/ Daniel Perlack
SPECIAL AGENT DANIEL PERLACK
U.S. DEPARTMENT OF HOMELAND SECUITY
HOMELAND SECURITY INVESTIGATIONS

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: Feb 24, 2021

Time: 8:07 AM, Feb 24, 2021

/s/ Andrea K. Johnstone
Hon. Andrea K. Johnstone
United States Magistrate Judge

8

## ATTACHMENT A

(Description of Property to be Searched)

19-1 Woodside Lane,                                         is a three-story light-yellow duplex home, with white trim.  19-1 is located on the left-side of the duplex when looking at the duplex from the street. The Duplex has two front doors (19-1 left side and 19-2 right side), it also has two garage doors (19-1 left side and 19-2 right side) on the ground floor located on the front side of the duplex.  Duplex 19-1 contains approximately 1,400 square feet and was built in 2008.  The driveway is located on the front left side of the duplex with a black mailbox on a wooden post and marked with 19-1 located to the left side of the driveway next to the street.



9

## ATTACHMENT B

(Particular Things to be Seized)

- The SHAM PACKAGE which is a white envelope bearing package number 3281.

- Books, records, receipts, notes, and ledgers relating to the ordering, receipt, possession, transportation, purchasing, shipment, tracking, delivery and distribution of controlled substances

- Papers and records relating to names, addresses, and telephone numbers relating to co-conspirators, sources of drug supply, and drug customers

- Indicia of occupancy, residency, and ownership or use of the subject premises, including, but not limited to, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements, identification documents and keys

- Electronic devices to include but not limited to cellular telephones, computers, tablets, and the memory thereof

- Controlled substances and drug paraphernalia, including, chemical diluents, weighing scales, and items utilized in the packaging of controlled substances

- U.S. currency, cryptocurrency, or any and all monetary instruments, or other items of value used in, or intended for use in, or derived from trafficking in controlled substances

All of which constitute fruits, evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841 and 846.